**GROSJEAN, Supervisor of Public Accounts, v. COONEY PETROLEUM CO., Inc.***
**No. 16991.**

Court of Appeal of Louisiana. Orleans.
May 30, 1938.

*Rehearing denied June 17, 1938.

See, also, 167 So. 880.

Gaston L. Porterie, Atty. Gen., and Justin C. Daspit, F. A. Blanche, E. L. Richardson, and Maurice B. Gatlin, Sp. Assts. to Atty. Gen., for appellant.

Edw. M. Heath, of New Orleans, for appellee.

JANVIER, Judge.

The Supervisor of Public Accounts of the State of Louisiana is seeking to collect from Cooney Petroleum Company, Inc., the tax imposed by Act 15 of the First Extraordinary Session of 1934, Section 1, "on all kerosene sold, used, consumed, distributed or handled in the State of Louisiana for domestic consumption", alleging that the said corporation, on October 17, 1934, had in its possession in the Parish of Jefferson 8,000 gallons of petroleum product on which no tax had been paid and the chemical analysis of which authorized its classification as kerosene and which is, therefore, subject to the tax imposed by the statute. The amount claimed to be due is set forth in the rule filed by plaintiff, as follows:

| "8,000 Gallons @ 1¢ per Gallon | $ 80.00 |
| 1/32¢ Inspection Fee | 2.50 |
| | $ 82.50 |
| 20% penalty for Delinquency | 16.50 |
| | $ 99.00 |
| 10% Attorney's Fees | 9.90 |
| Total Tax, Inspection Fee, Penalty and Attorney's fee due Supervisor of Public Accounts, | $108.90." |

Plaintiff also prays that the said corporation, in accordance with Section 4 of the act, "be ordered to cease from further pursuit of business as a dealer" until it shall have paid the "said taxes, penalties, attorneys fees and costs."

In the said statute kerosene is defined as:

"A refined petroleum product having the following properties to-wit: gravity 34° to 48°; Taglibue closed cup flash. 110° F. (43.3° C.) minimum; recovery at 575° F. (310.6° C.) 90% minimum; testing and analyzing to be done in accordance with the methods adopted by the United States Department of Commerce; relative viscosity at 68° F. (20° C.) Cottrell-Ostwald viscosimeters between .8000 to 5.000; burning test: capable of being burned in a lamp, furnace, stove, tractor or motor."

Respondent resists payment of the tax, penalties and charges on two grounds, both of which are based on the contention that the liquid which was on hand cannot be classified as "kerosene" under a proper interpretation of the definition set forth in the statute, and respondent also maintains that there is not sufficient proof as to the quantity of the liquid which was found to be on hand on the day in question.

From a judgment dismissing the rule the Supervisor of Public Accounts has appealed.

It is conceded by respondent that the liquid in question is a petroleum product and that it is intended for "domestic consumption" and that in all respects save one it

complies with the chemical analysis and meets the tests set forth in the statute for determining what, within the contemplation of the statute, is "kerosene", and it is also true that the use to which the liquid is intended to be put need not be inquired into in determining whether it is subject to the tax if the liquid itself is found to meet the chemical requirements and tests set forth in the statute. See Grosjean v. American Paint Works, La.App., 160 So. 449.

■ Respondent, however, denies that the said product meets the "burning test" established by the statute and maintains that, for this reason, it cannot be classified as "kerosene".

The report of the State chemist who tested the liquid shows that it was subjected to a burning test (apparently in a lamp) for two hours and fifteen minutes; that the height and width of the flame were "standard" and that the condition of the wick and of the chimney were "satisfactory". To one not familiar with methods commonly employed in subjecting kerosene to a burning test this report would seem to indicate that the liquid had met the required test satisfactorily. But respondent maintains that it is generally recognized that a burning test must continue for at least sixteen hours and that no capable chemist will accept such a test unless it has been conducted for at least that length of time and that the United States Department of Commerce requires a test of that duration.

From this premise it is argued that, though the statute does not expressly require that the test be continued for that length of time, a proper interpretation thereof would place this meaning upon it. But plaintiff counters with the argument that the statute does not require so long a test and that, although, in complying with certain other requirements, it does specify that the tests and methods adopted by the United States Department of Commerce shall be followed, the grammatical arrangement of the paragraph shows that it was not intended that the said requirement should be applied to the burning test. The reference to the methods of the federal department is not contained in that part of the paragraph which requires the burning test and, therefore, whether intentionally or not, the section is so worded as to make it appear that, though all other tests must comply with the federal standard, this test is satisfactorily met if, without reference to any such methods or to any particular length of time, the liquid is "capable of being burned in a lamp, furnace, stove, tractor or motor".

We deem it significant that, only a few months before the enactment of this tax statute, the legislature passed Act No. 12 of the Regular Session of 1934 and therein required that all kerosene should be inspected and that, in this inspection statute, not only was the burning test required to continue for at least sixteen hours, but that it was expressly provided that this test, as well as all others, should be conducted according to methods of the United States Department of Commerce. It would seem, then, that the legislature has, for the purpose of inspection, adopted regulations considerably more stringent than those required for the purpose of taxation. We cannot but believe that this was done deliberately. We are unable to conclude that it was intended that the same tests should be applied in both cases since the legislature so clearly set forth different standards in the two acts.

■ But, if we are in error and if it was intended that the "burning test" of the tax statute, under which this action is brought, should be continued for not less than sixteen hours, we note that the act provides several alternative ways in which the said burning test may be met. It plainly provides that it is met not only if the liquid is capable of being burned in a lamp, but also if it is capable of being burned in a furnace, a stove, a tractor, or a motor. If it can be burned in any one of the objects mentioned, it meets one of the alternative requirements of the statute. Even the "practical chemist" who testified on behalf of respondent admitted that this particular liquid would burn in certain types of motors. He was asked: " * * * Would it burn in a motor?" He answered: "Under some conditions. There are types of motors in which it would burn, undoubtedly". He also expressed the opinion that it would burn in a tractor.

Since the liquid is conceded to have complied with all of the other requirements of the statute and since respondent's witness says that it would burn in at least one of the objects mentioned, it is shown that it meets all of the tests required by the statute.

■ We have stated that the other defense is based primarily on the contention that the said statute, if properly interpreted, would not include the particular liquid in question. This other defense was raised by

exception of no cause of action. It is directed at the fact that, in the statute which imposes the tax on kerosene, the legislature, in defining "kerosene", included certain liquids which, prior to that time, would not, by common acceptation, have been classified as "kerosene". The argument is that, if the statute be interpreted as contemplating liquid which will not burn clearly and freely and steadily for at least sixteen hours, it then includes a liquid which has never heretofore been classified as kerosene, and that, therefore, the purpose of the statute to tax such a liquid is not clearly set forth in the title of the statute.

This argument is based on the reasoning followed by the Supreme Court of this State in the matter of State v. Louisiana Coca-Cola Bottling Co., 169 La. 167, 124 So. 769. There a general license statute—Act 205 of 1924—levied a license tax on peddlers without defining the meaning of the word "peddler". In an amendment to that statute the legislature, by Act 299 of 1926, inserted a clause defining the word "peddler" and in such definition classified a peddler as one who, among other acts, "goes from house to house, or place to place, or store to store, exposing and selling the merchandise which he carries with him and delivering the same at the time of or immediately after the sale or without returning to the base of business operation between the taking of the order and the delivery of the goods, otherwise than for advertising purposes". The Supreme Court held that the word "peddler" had never been given such a meaning in its generally accepted use and that therefore, since there was nothing in the title of either act from which it might be seen that the purpose was to define "peddlers", the attempt to include within the term persons who had not theretofore been considered as peddlers violated that provision of the Constitution of 1921 (Section 16, Art. 3) which requires that "every law enacted by the Legislature * * * shall have a title indicative of such object." But the court said that if, in the first act, the legislature had attempted to define the word "peddler", it might have done so under the title given to that act, without violating the constitutional requirements. In other words, the fault which the court found in the Coca-Cola Case was not that the legislature attempted to define the word "peddler", but that it did so in a statute which was enacted to amend an earlier one in which no attempt at definition had been made (page 770):

"It would seem clear enough that, in passing the original act, Act No. 205 of 1924, the Legislature might, under the title given to that act, and repeated in the amendatory act, have defined the word 'peddler' as it did in the latter act. However, that is not the question. In the original act the Legislature had levied, in section 18 thereof, the license against peddlers, without seeking to define what should constitute a peddler. The word 'peddler,' therefore, was to be accepted in its generally accepted sense."

Here the title of the statute shows that one of its purposes is "to define 'kerosene'."

Even if the title did not contain a reference to the purpose to define, the doctrine involved in the Coca-Cola Case is applicable only where the definition plainly extends the meaning of a word or term beyond that which has been customarily and commonly given to it, and we do not see in the definition of the word "kerosene", as contained in the act which is before us, any substantial extension beyond what has been ordinarily included within the term.

■ So far as the quantity of the liquid sought to be taxed is concerned, the record shows plainly that when the inspector for the State called on the proper official of defendant company to ascertain the quantity of liquid on hand he was told that that quantity was 8,000 gallons and the said official affixed his signature to a report showing that that quantity was on hand. There can not now be raised any question as to the quantity.

It thus appears that the liquid is taxable in accordance with the statute in question. The statute, in Section 4, provides that, until the taxes and charges are paid, the dealer shall be ordered to cease from further pursuit of business.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed and that there now be judgment in favor of the Supervisor of Public Accounts of the State of Louisiana and against Cooney Petroleum Company, Inc., in the full sum of $108.90, together with all costs of this proceeding.

It is further ordered, adjudged and decreed that, in default of the payment of this amount, the defendant in rule, Cooney Petroleum Company, Inc., be and it is hereby ordered to cease from further pursuit of its business as a dealer in kerosene.

Reversed.